## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSHUA ABRAMS**, <br><br> *Plaintiff,* <br><br> v. <br><br> **ERESEARCH TECHNOLOGY, INC.**, <br><br> *Defendant.* | **Case No. 2:23-cv-01881-JDW** |

### MEMORANDUM

When I gave Joshua Abrams leave to file a Second Amended Complaint, I spelled out the claims that he could, and could not, pursue against his former employer eResearch Technology, Inc. But he filed a Second Amended Complaint that goes beyond what I permitted, including (a) allegations to support claims that I determined would be futile to assert, and (b) allegations about his interactions with me and with court staff. Though I granted him leave to assert a claim under New Jersey's Compassionate Use Medical Marijuana Act, I will dismiss that claim because no private right of action exists, and I will also strike Mr. Abrams's allegations that do not relate to the claims in the case. But this case has been pending for three years, and it's time for it to move forward, so I won't strike allegations that relate to Mr. Abrams's additional claims under the Americans With Disabilities Act or the Pennsylvania Human Relations Act, even though he didn't renew his request to assert them.

## I.     BACKGROUND

Mr. Abrams started working at ERT in May 2019. In July 2020, a personal conflict arose between Mr. Abrams and his supervisor, Jake Earwood, who was also a friend of Mr. Abrams. This conflict spilled into the workplace, and Mr. Abrams alleges that Mr. Earwood poisoned ERT against him. For example, he contends that Mr. Earwood disclosed Mr. Abrams's mental health status and use of medical marijuana to other coworkers, Human Resources, management, and even Mr. Abrams's landlord. Mr. Abrams also alleges that Mr. Earwood was using illegal drugs and, in doing so, exacerbated Mr. Abrams's own ongoing mental health issues because Mr. Abrams was in recovery. Mr. Abrams complained about Mr. Earwood's conduct to ERT, asked the company to drug-test Mr. Earwood, and asked that ERT not require him to work with Mr. Earwood. ERT denied Mr. Abrams's requests and terminated him. Mr. Abrams contends that ERT discriminated against him based on his disability, among other things.

In August 2020, shortly after his termination, Mr. Abrams sued ERT in the Court of Common Pleas of Bucks County, Pennsylvania, where ERT is located. ERT filed Preliminary Objections to the Complaint, and the state court granted those objections on November 20, 2020, dismissing certain claims with prejudice and others without. Not much happened in the case after that.

More than two years later, in April 2023, Mr. Abrams filed an Amended Complaint in which he asserted that ERT violated the ADA. As a result, ERT removed the case to this

Court. On May 17, 2023. ERT filed a motion to dismiss the Amended Complaint in full, and I granted the motion. Like the state court, I dismissed some claims with prejudice and others without, advising Mr. Abrams that he could seek leave to amend the claims I dismissed without prejudice. On August 31, 2023, Mr. Abrams filed a motion to amend his Amended Complaint. His proposed second amended complaint asserted fourteen claims, including: (1) Wrongful Termination, (2) Hostile Work Environment, (3) Breach Of Implied Covenant Of Good Faith and Fair Dealing, (4) Failure To Prevent Discrimination And Harassment, (5) Intentional Infliction Of Emotional Distress, (6) Invasion Of Privacy, (7) Violation Of The ADA, (8) Interference With Prospective Economic Advantage, (9) Violation Of The PHRA, (10) Breach Of Contract, (11) Extortion, (12) Violation Of The New Jersey Compassionate Use Medical Marijuana Act, (13) Violation Of Whistleblower Protection Law, and (14) Negligent Supervision.

I granted Mr. Abrams's motion for leave to amend in part and denied it in part. Relevant here, I granted Mr. Abrams leave to file a second amended complaint including his proposed claims of retaliation in violation of the ADA and PHRA and a claim pursuant to New Jersey's Compassionate Use Medical Marijuana Act ("CUMMA"). I denied his motion in all other respects and told him not to assert additional claims other than those for which I granted him leave.

On October 27, 2023, Mr. Abrams ignored my Order and filed a Second Amended Complaint which includes eight claims: (1) Retaliation For Disability Accommodations; (2)

Hostile Work Environment; (3) Failure To Prevent Discrimination And Harassment; (4) Violation Of The ADA; (5) Wrongful Termination; (6) Violation Of Whistleblower Protection Law; (7) Violation Of The PHRA; and (8) Non-Compliance With New Jersey's CUMMA. ERT moved to dismiss the CUMMA claim, but it does not seek to dismiss Mr. Abram's claims for disability retaliation under the ADA and PHRA. In addition, ERT asks me to strike all of the paragraphs in the Second Amended Complaint aside from Paragraphs 8, 15, and 23, because I did not grant Mr. Abrams leave to include those other claims when I granted him leave to amend. ERT's motion is ripe for disposition.

## II.    MOTION TO DISMISS

### A.    Legal Standard

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786-87 (same). First, the court must identify the elements needed to set forth a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the

presumption of truth. *See id*. Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

      **B.    Discussion**

      CUMCA makes it "unlawful to take any adverse employment action against an employee who is a registered qualifying patient based solely on the employee's status as a registrant with the [Cannabis Regulatory Commission]." N.J.S.A. § 24:6I-6.1(a).[1] CUMCA does not include an express private cause of action for aggrieved employees. As far as I can tell, no court has considered whether CUMCA creates an implied private cause of action.

      "'New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action' ... because the failure to explicitly include a private cause of action is 'reliable evidence that the Legislature neither intended to create such a cause of action ... nor desired the judiciary to create one by implication.'" *Zanetich v. Wal-Mart Stores E., Inc.*, No. 22-cv-5387, 2023 WL 3644813, at *4 (D.N.J. May 25, 2023) (quotations omitted).  To determine whether an implied private

---

[1] The New Jersey legislature amended CUMMA in 2019, and the statute is now known as the Jake Honig Compassionate Use Medical Cannabis Act ("CUMCA").

right of action exists under New Jersey law, courts consider whether: (1) "the plaintiff is 'one of the class for whose especial benefit the statute was enacted';" (2) "there is any evidence that the Legislature intended to create a private cause of action under the statute;" and (3) "implication of a private cause of action in th[e] case would be 'consistent with the underlying purposes of the legislative scheme.'" *Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015) (quotation omitted). Consideration of these factors leads me to conclude that CUMCA did not create an implied private cause of action for aggrieved employees like Mr. Abrams.

CUMCA prohibits employers from taking adverse employment actions against an employee based solely on the employee's status as a registered medical marijuana user. *See* N.J.S.A. § 24:6I-6.1(a).  And the New Jersey Legislature made clear that "the purpose of [CUMCA] is to protect from arrest, prosecution, property forfeiture, and criminal and **other penalties**, those patients who use cannabis to alleviate suffering from qualifying medical conditions[.]" N.J.S.A. § 24:6I-2(e) (emphasis added). Thus, it appears that the Legislature enacted CUMCA to benefit individuals like Mr. Abrams who use marijuana for medical purposes.  However, the remaining two factors do not support the existence of a private right of action.

*First*, there is no evidence that the Legislature intended to create such a right. As set forth above, the failure to include an express private cause of action in a statute is "reliable evidence" that the Legislature did not intend to create one. *Zanetich*, 2023 WL

3644813 at *4. In addition, New Jersey's "Legislature certainly knows how to authorize private causes of action when it desires to do so." *Est. of Burns by & through Burns v. Care One at Stanwick, LLC*, 258 A.3d 368, 376 (N.J. Super. Ct. App. Div. 2021). For example, the New Jersey Law Against Discrimination ("NJLAD") permits "any person claiming to be aggrieved by an unlawful employment practice or an unlawful discrimination" to "initiate suit in Superior Court ...." N.J.S.A. § 10:5-13(a)(2). There is no similar provision in CUMCA authorizing a medical marijuana user to sue his employer based on an adverse employment action, and courts "find meaning when the Legislature acts differently from what it normally does in similar settings." *Est. of Burns*, 258 A.3d at 376. Thus, the evidence suggests that the Legislature made a conscious decision not to create a private cause of action for medical marijuana users, because it knew how to do so but declined to include such a provision in CUMCA.

*Second*, permitting Mr. Abrams to bring an implied private cause of action under CUMCA would be inconsistent with the legislative scheme. CUMCA established the Cannabis Regulatory Commission ("CRC") to "assume all powers, duties, and responsibilities with regard to the regulation and oversight of activities authorized pursuant to [CUMCA] ... for the further development, expansion, **regulation, and enforcement of activities associated with the medical use of cannabis pursuant to [CUMCA]**." N.J.S.A. § 24:6I-24(a)(1) (emphasis added). In other words, the statute tasks the CRC with CUMCA's enforcement, and permitting individual employees to bring private

lawsuits is inconsistent with that statutory scheme.  Given all this, I find that CUMCA does not provide an implied private cause of action for aggrieved employees.

Even if such a cause of action did exist, Mr. Abrams could not state a claim under CUMCA for two reasons. First, CUMCA prohibits employers from taking adverse employment actions against an employee "based **solely**" on the employee's status as a registered medical marijuana user. Mr. Abrams's Second Amended Complaint does not state a claim under CUMCA because he admits that his "medical marijuana status was not the SOLE reason for [his] termination[.]" (ECF No. 39 at ¶ 23 (original emphasis).) Even if, as Mr. Abrams contends, his medical marijuana status "clearly had a role" in ERT's decision to fire him, it does not matter because the statute prohibits termination decisions based *solely* on that status.

Finally, CUMCA would not apply in this case, where "Plaintiff's employment began and ended in Pennsylvania. [He] worked exclusively in that state and the conduct which [he] alleges was unlawful occurred there." *Buccilli v. Timby, Brown & Timby*, 660 A.2d 1261, 1263 (N.J. Super. Ct. App. Div. 1995). Though the statute itself is silent on whether it applies extraterritorially, the Supreme Court of New Jersey has made clear that "New Jersey law does not regulate conduct outside the state. Rather, New Jersey law regulates conduct in New Jersey[.]" *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 318 (N.J. 1993). Thus, Mr. Abrams could not assert a CUMCA claim even if such a claim were viable. The fact that Mr. Abrams might have lived in New Jersey does not change that analysis because CUMCA

regulates employers' conduct, and ERT's conduct occurred in Pennsylvania, even if Mr.

Abrams felt it in New Jersey.

## III.   MOTION TO STRIKE

### A.   Legal Standard

The Federal Rules of Civil Procedure authorize a court to "strike from a pleading …

any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The

purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

unnecessary forays into immaterial matters." *Snider for Goldhirsh v. State Farm Fire & Cas.

Co.*, 644 F. Supp. 3d 141, 147 (E.D. Pa. 2022) (quotation omitted). "Content is immaterial

when it 'has no essential or important relationship to the claim for relief.'" *Id.* (same).

"Content is impertinent when it does not pertain to the issues raised in the complaint."

*Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 615 (E.D. Pa. 2015) (same).

In addition, district courts within the Third Circuit use Rule 12(f) to strike

unauthorized amendments to pleadings. *See, e.g.*, *Simmons v. Simpson House, Inc.*, No.

15-cv-6636, 2017 WL 1196636, at *1 (E.D. Pa. Mar. 30, 2017); *T.J. McDermott

Transportation Co. v. Cummins, Inc.*, No. 14-cv-4209, 2017 WL 11476192, at *2 (D.N.J. Jan.

17, 2017).

### B.   Discussion

ERT's motion to strike the vast majority of Mr. Abrams's Second Amended

Complaint implicates a variety of competing interests. On the one hand, the Federal Rules

of Civil Procedure encourage the liberal amendment of pleadings. And when it comes to *pro se* litigants like Mr. Abrams, the federal courts employ a long-standing tradition of affording such litigants "more lenient treatment" when assessing their compliance with pleading and other procedural requirements. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 238 n.16 (3d Cir. 2017) (citation omitted). At the same time, courts require parties to attach their proposed amended pleadings to their motions for leave to amend so that the nonmovants will have notice of the proposed changes and the Court can assess the various factors for granting leave to amend. But Mr. Abrams filed a Second Amended Complaint that differs from the proposal he submitted for my review. As a result, he has frustrated "the prophylactic benefit of submitting the actual proposed amended complaint for the Court to consider in light of the [relevant] factors." *Dover Steel Co. v. Hartford Acc. & Indem. Co.*, 151 F.R.D. 570, 574 (E.D. Pa. 1993).

Because Mr. Abrams's Second Amended Complaint exceeds the scope of my Order granting him leave to amend, "it is necessary to evaluate the propriety of granting [him] leave to amend to assert those allegations which exceed the scope of the order." *Wallace v. Sys. & Computer Tech. Corp.*, No. 95-cv-6303, 1997 WL 602808, at *7 (E.D. Pa. Sept. 23, 1997). In general, an unauthorized amendment "will not be considered unless the amendment is re-submitted for the court's approval." *Id.* (quotation omitted). However, some courts will consider an unauthorized amendment "as properly introduced when leave to amend would have been granted had it been sought, and when it does not

appear that any of the parties will be prejudiced by allowing the change." *Id.* (same). Given

Mr. Abrams's *pro se* status and my responsibility "to secure the just, speedy, and

inexpensive determination of every action and proceeding,"[2] the approach in *Wallace* is

best for this case. This approach affords Mr. Abrams some leniency while also considering

the impact on ERT. On its own, the fact that Mr. Abrams included claims and allegations

beyond the scope of what I authorized in my Order is not a valid reason to ignore them.

To disregard them based on a technical violation would "disturb the fundamental

principle that the substance of the underlying dispute should be decided on the merits."

*Dover Steel*, 151 F.R.D. at 575.

I will permit Mr. Abrams to amend his ADA and PHRA claims rather than strike

them. When I resolved Mr. Abrams's Motion For Leave To Amend, I explained that it would

be futile to permit him to amend his disability discrimination, failure to accommodate,

and hostile work environment claims because his proposed amended pleading did not

include any facts demonstrating that he was disabled under the ADA and PHRA. Now,

however, Mr. Abrams's Second Amended Complaint includes allegations that he suffers

from "autism, bipolar disorder, insomnia, sleep apnea, Asperger's, depression, anxiety,

panic disorder without agoraphobia, ADHD, and more."  (ECF No. 39 at ¶ 1.)  He also

alleges that: (1) he has suffered from these conditions for many years; (2) these conditions

---

[2] Fed. R. Civ. P. 1

impair his essential life activities; (3) he experienced these conditions while working for ERT and received treatment during that time; and (4) ERT perceived Mr. Abrams to be disabled while he worked there. (*Id.* at ¶¶ 1-2.)  These allegations allege a disability under the ADA and PHRA, so those claims are no longer futile for that reason.

While the courts "have consistently adopted a liberal approach to the allowance of amendments[,] ... '[i]t is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment.'" *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369 (3d Cir. 2020) (quotation omitted). ERT will not be prejudiced by permitting Mr. Abrams to include these allegations in his Second Amended Complaint because Mr. Abrams's claims of disability retaliation are in this case, and ERT will have to defend against those claims anyway. Indeed, despite citing both *Dover* and *Wallace*, ERT did not suggest that it would suffer prejudice if I permit Mr. Abrams to include these new allegations. Thus, I will not strike Paragraphs 1-2, 8, 15-19, and 22, which contain the allegations related to Mr. Abrams's claims under the ADA and PHRA.[3]

However, I will not permit Mr. Abrams to amend his claims of Wrongful Termination and Violation of Whistleblower Protection Law because his allegations as to those two claims are the same as those he asserted when he sought leave to amend. The

---

[3] As I explained in my prior Order, I consider Mr. Abrams's claims of Hostile Work Environment and Failure To Prevent Discrimination And Harassment to be part of his ADA and PHRA claims.

allegations were futile then, and they remain futile for the same reasons I explained before. (*See* ECF No. 28 at ¶¶ 12-13, 29.) Therefore, I will not permit Mr. Abrams to include these allegations in his Second Amended Complaint and will strike Paragraphs 20-21.

Likewise, I will strike Mr. Abrams's allegations regarding the proceedings in this matter—including his interactions with the Court and court staff—because those allegations are both immaterial and impertinent. How I conducted a hearing in this case and how the Court's staff has responded to Mr. Abrams's various inquiries and requests for assistance throughout this case have nothing to do with his termination from ERT, which is what this case is about. In addition, many of Mr. Abrams's allegations are arguments that he has made in motions for reconsideration and clarification, and I have ruled on them. His further responses to and/or disagreement with my prior rulings have no place in the Second Amended Complaint because those legal arguments are not factual allegations that support his causes of action against ERT. As I have said before, if Mr. Abrams disagrees with my rulings in this case, then he may appeal those rulings when the case is over. Because Paragraphs 3-7, 9-14, and 24 contain allegations that do not pertain to the relevant issues and have no relationship to Mr. Abrams's claims for relief, I will strike them.

## IV.    CONCLUSION

For the reasons set forth above, I will grant ERT's motion to dismiss Mr. Abrams's claim based on CUMCA, and I will grant ERT's motion to strike in part and deny it in part.

Mr. Abrams's Second Amended Complaint, as modified, will define the scope of claims in this case. It's well past time for this case to get moving and get to resolution. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

November 28, 2023